IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY ALLEN THOMAS, #R-21405, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DOCTOR JOHN DOE, ) <br> WARDEN DUNCAN, ) <br> and ILLINOIS DEPARTMENT OF ) <br> CORRECTIONS, ) <br> ) <br> Defendants. ) | Case No. 17−cv−01367−NJR |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, District Judge:**

Plaintiff Tracy Thomas, an inmate who is currently incarcerated in Dixon Correctional Center ("Dixon"), brings this action for deprivations of his constitutional rights at Lawrence Correctional Center ("Lawrence") pursuant to 42 U.S.C. § 1983. Plaintiff originally filed this action in the United States District Court for the Northern District of Illinois, and the Northern District transferred the case to this District on December 18, 2017. *See Thomas v. Doe*, No. 17-cv-07811 (N.D. Ill. filed Oct. 30, 2017) (Doc. 5). In the Complaint, Plaintiff alleges that he was denied adequate medical treatment for a knee injury and broken arm that he sustained in the prison yard at Lawrence on or around May 1, 2015. (Doc. 1, pp. 4-11). He asserts an Eighth Amendment claim against Doctor John Doe, Warden Duncan, and the Illinois Department of Corrections ("IDOC"). (Doc. 1, p. 11). The Court also recognizes claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and/or Rehabilitation Act, 29 U.S.C. §§ 794-794e. Plaintiff seeks monetary damages. (Doc. 1, p. 12).

1

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

## The Complaint

According to the Complaint, Plaintiff injured his knee and arm while playing basketball at Lawrence on or around May 1, 2015. (Doc. 1, p. 4). Plaintiff lay on the basketball court for almost 45 minutes before prison officials arrived to help him. *Id*. He told one of the officers that he needed immediate medical attention, but he was not taken for treatment. *Id*. When Plaintiff

later asked the officer why, the officer admitted that he failed to contact the health care unit ("HCU") on Plaintiff's behalf. *Id*.

As Plaintiff made his way back to the housing unit, his left knee gave out. (Doc. 1, p. 5). Plaintiff fell to the floor. *Id*. The officer could see that Plaintiff's knee was red and swollen, and he contacted the nursing staff for assistance. *Id*. Several nurses arrived 45 minutes later and transported Plaintiff to the HCU in a wheelchair. *Id*. There, Plaintiff complained of pain in his left knee and arm. *Id*. A nurse took his vital signs and told Plaintiff that he would be seen by a doctor. *Id*.

An unknown doctor ("Doctor John Doe") examined Plaintiff. (Doc. 1, p. 6). Doctor Doe said that he was only concerned about Plaintiff's arm. *Id*. The doctor set Plaintiff's arm and gave him pain medication before sending him back to his housing unit by wheelchair. *Id*. The nurse who transported Plaintiff to his housing unit then took the wheelchair from him. *Id*. When Plaintiff insisted that he needed the wheelchair, she told Plaintiff that he would "have to walk as best as [he] could." *Id*.

Plaintiff was unable to use his left leg to walk, and he soon injured himself again by falling. (Doc. 1, p. 6). While hopping out of the shower on one leg with his left arm in a sling, Plaintiff fell onto his left arm and dislocated it again. (Doc. 1, p. 7). At the same time, he felt a tearing pain in his left knee. *Id*. An officer contacted the HCU on his behalf, and Plaintiff was transported to the HCU for treatment. *Id*.

By the time he arrived, Doctor Doe was gone for the day, and Plaintiff was taken to a local hospital for further evaluation and treatment. (Doc. 1, p. 7). X-rays confirmed that Plaintiff suffered from a torn ACL in his left leg and a broken left arm. *Id*. The doctor placed his arm in a

soft cast, issued him a knee brace, and prescribed him pain medication. *Id*. He also scheduled an MRI of Plaintiff's left knee and referred him to an orthopedist. *Id*.

The following day on May 2, 2015, Plaintiff attended a follow-up appointment with Doctor Doe. (Doc. 1, p. 8). At the appointment, Plaintiff described his more recent injuries and his treatment at the hospital. *Id*. He also informed the doctor about his referral to an orthopedist. *Id*. Doctor Doe confiscated Plaintiff's knee brace and told Plaintiff that he "wouldn't be seeing anyone at all" if Doctor Doe "had anything to do with it." *Id*. Plaintiff was sent back to his housing unit without a knee brace or any other medical device to assist with mobility. *Id*.

Plaintiff fell 4 or 5 more times after meeting with Doctor Doe on May 2, 2015. (Doc. 1, p. 9). As a result, he suffered additional injuries to his knee and arm, including a chipped bone in his arm that necessitated surgery. *Id*. His arm also had to be re-broken and reset. *Id*.

Following an MRI of Plaintiff's left knee, an outside specialist issued Plaintiff another knee brace and a note that emphasized the importance of using the brace. (Doc. 1, p. 9). Doctor Doe was "very upset" by the note. (Doc. 1, p. 10). Accompanied by two officers, the doctor entered Plaintiff's cell and explained that he "did not care" about the note. *Id*. He said, "[I] am the [doctor] here[,] and [I] will do what [I] want." *Id*. At that, Doctor Doe again confiscated Plaintiff's knee brace and told him to "put in a complaint" if he disagreed with the doctor's decision. *Id*. Plaintiff filed numerous complaints. *Id*. He also visited the HCU several more times, but no one would help him. *Id*.

Plaintiff was released from prison on July 2, 2015. (Doc. 1, p. 10). At some point thereafter, he met with a specialist, named Doctor Teague, in Rockford, Illinois. *Id*. The doctor sent Plaintiff for an MRI and reported that Plaintiff's anterior cruciate ligament ("ACL") was

badly torn. *Id*. The ligaments were "gone," and the doctor could detect "bone-on-bone" contact. *Id*. Plaintiff was referred for knee surgery. *Id*.

## Discussion

Based on the allegations in the *pro se* Complaint, the Court finds it convenient to divide the action into the following counts:

> **Count 1 –** Eighth Amendment claim against Doctor Doe, Warden Duncan, and IDOC for denying Plaintiff adequate medical care for the broken arm and torn ACL that resulted from a basketball injury at Lawrence on or around May 1, 2015.
>
> **Count 2 -** Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and/or Rehabilitation Act, 29 U.S.C. §§ 794-794e, for failing to accommodate Plaintiff's disability-related needs when prison officials confiscated his prescribed knee brace and denied him a wheelchair at Lawrence beginning in May 2015.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits. **Any other claims in the Complaint that are not identified above are inadequately pled under *Twombly* and are considered dismissed without prejudice from this action.**

### Count 1

The Eighth Amendment prohibits the cruel and unusual punishment of prisoners. U.S. CONST., amend. VIII. The Supreme Court has long held that deliberate indifference to a prisoner's serious medical needs violates the proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state an Eighth Amendment claim based on the denial of medical care, a prisoner must satisfy two requirements. First, the prisoner must allege that he suffered from a sufficiently

serious medical condition, which is an objective standard. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citations omitted). Second, he must demonstrate that each defendant responded to his medical condition with deliberate indifference, which is a subjective standard. *Id*.

A medical condition is considered objectively serious where it has either been diagnosed by a physician as requiring treatment or where the need for treatment would be obvious to a layperson. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Plaintiff's broken arm and torn ACL qualify as serious medical conditions for screening purposes because a doctor diagnosed both injuries and recommended treatment that included surgery for them. (Doc. 1, pp. 4-11).

Deliberate indifference is established when a defendant realizes that a substantial risk of serious harm to the prisoner exists but disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Negligence, or even gross negligence, does not constitute deliberate indifference. *Gayton*, 593 at 620.

The deliberate indifference claim against Doctor John Doe survives preliminary review. The allegations suggest that Doctor Doe responded to Plaintiff's serious medical conditions with deliberate indifference. He was allegedly aware of Plaintiff's injuries and the need for further treatment, but the doctor confiscated Plaintiff's knee brace and otherwise took no action to treat him. (Doc. 1, pp. 4-11). Count 1 shall receive further review against this defendant.

But Plaintiff cannot maintain his suit for money damages against the IDOC, because the IDOC is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections

is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). Accordingly, Count 1 shall be dismissed with prejudice against the IDOC.

Likewise, Plaintiff cannot proceed with his claim against Warden Duncan. The warden is named as a defendant in the case caption but not mentioned in the statement of claim. (Doc. 1, pp. 1, 4-11). It appears that Plaintiff named the warden as a defendant in this action based only on his or her supervisory role at the prison. But there is no supervisory liability in a § 1983 action. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). To be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Id*. (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). The Complaint sets forth no allegations suggesting that Warden Duncan was personally aware of Plaintiff's injuries and his need for treatment and responded with deliberate indifference. Accordingly, Count 1 shall be dismissed without prejudice against this defendant.

Finally, Plaintiff cannot proceed with this claim against any other individuals who are mentioned in the statement of his claim but not named as defendants. This includes the various officers, nurses, and doctors who Plaintiff alluded to in the statement of his claim. (Doc. 1, pp. 4-11). When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). All claims against these individuals are considered dismissed without prejudice from this action.

**Count 2**

The ADA and Rehabilitation Act both prohibit discrimination against qualified individuals because of a disability. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). To make out a *prima facie* case of discrimination under the ADA and Rehabilitation Act, a plaintiff must show that: (1) he suffers from a disability as defined in the statutes; (2) he is qualified to participate in the program in question; and (3) he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Supreme Court "has located a duty to accommodate in the statute generally," and refusing to make reasonable accommodations is tantamount to denying access. *Jaros*, 684 F.3d at 672 (citing *Wis. Cmty. Serv.*, 465 F.3d 737, 747 (7th Cir. 2006); *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985)). In addition to these requirements, the Rehabilitation Act also requires a plaintiff to demonstrate that the program received federal financial assistance, which all states accept for their prisons. *Jaros*, 684 F.3d at 671. *See also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

Plaintiff did not explicitly assert a claim under the ADA or the Rehabilitation Act in his Complaint; he only asserted claims under the Eighth Amendment. The Court notes, however, that a plaintiff may bring a private cause of action for money damages under Title II, if the state actor's conduct also violates the Eighth Amendment. *See U.S. v. Georgia*, 546 U.S. 151 (2006). Further, the omission of the ADA and/or Rehabilitation Act claim does not amount to an abandonment of Plaintiff's potential claim. Courts "are supposed to analyze a litigant's claims and not just legal theories that he propounds," particularly when a litigant is proceeding *pro se*.

*See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (citations omitted). The ADA and/or Rehabilitation Act claims shall receive further review.

Although Plaintiff has named several defendants in the Complaint, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA." *See Jaros*, 684 F.3d at 670 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131). Accordingly, Count 2 shall proceed against the IDOC only. This claim shall be dismissed with prejudice against all other defendants.

### Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with Count 1 against Doctor John Doe. This defendant must be identified with particularity, however, before service of the Complaint can be made on him. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the current Warden of Lawrence Correctional Center shall be added as a defendant in this action, in his or her official capacity only, for the sole purpose of responding to discovery aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Doctor John Doe is discovered, Plaintiff shall file a Motion to Substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Pending Motions

1. **Motion for Leave to Proceed** *in forma pauperis* **(Doc. 3)**

Plaintiff's Motion for Leave to Proceed *in forma pauperis* shall be addressed in a separate court order.

2. **Request for Counsel in Complaint (Doc. 1, p. 11)**

In the Complaint, Plaintiff seeks the Court's assistance in recruiting counsel to represent him in this matter. (Doc. 1, p. 11). Unfortunately, however, he filed no motion in support of this request. Plaintiff also failed to describe his own efforts to retain counsel before seeking the Court's assistance in doing so, and he did not explain why he is unable to proceed *pro se* in this matter. Given this, Plaintiff's request for counsel is **DENIED** without prejudice at this time. Plaintiff may renew the request by filing a Motion for Recruitment of Counsel at any time he deems it appropriate to do so, after first attempting to locate counsel on his own. The Clerk is **DIRECTED** to provide Plaintiff with a blank Motion for Recruitment of Counsel for this purpose.

## Disposition

The Clerk is directed to **ADD** the **WARDEN of LAWRENCE CORRECTIONAL CENTER (in his or her official capacity only)** as a defendant in CM/ECF. This defendant must timely respond to discovery aimed at identifying Doctor John Doe with specificity.

**IT IS HEREBY ORDERED** that **COUNT 1** against Defendant **DOCTOR JOHN DOE** survives screening and is subject to further review once this unknown defendant is properly identified in a Motion for Substitution of Parties. However, **COUNT 1** is **DISMISSED** with prejudice against Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** and **DIMISSED** without prejudice against Defendant **WARDEN DUNCAN** for failure to state a

claim upon which relief may be granted.

IT IS ORDERED that COUNT 2 survives screening and is subject to further review against Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS**. However, **COUNT 2** is **DISMISSED** with prejudice against Defendant **DOCTOR JOHN DOE** and **WARDEN DUNCAN** for failure to state a claim upon which relief may be granted.

With respect to **COUNTS 1** and **2**, the Clerk of Court shall prepare for Defendant **WARDEN of LAWRENCE CORRECTIONAL CENTER** (in his or her official capacity only), **ILLINOIS DEPARTMENT OF CORRECTIONS**, and **DOCTOR JOHN DOE** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that service shall not be made on Defendant **DOCTOR JOHN DOE** until such time as Plaintiff has identified this defendant by name in a properly filed Motion for Substitution of Parties. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as

directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendant.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a

transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: January 16, 2018**

                                                    **NANCY J. ROSENSTENGEL**
                                                    **United States District Judge**