IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY ALLEN THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-cv-1367-NJR-MAB |
| | ) |
| DR. JOHN COE and ILLINOIS | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 57), which recommends that the Motion to Dismiss filed by Defendant Dr. John Coe be granted. Also before the Court is a second Report and Recommendation (Doc. 65)—also issued by Judge Wilkerson—which recommends that the Motion for Judgment on the Pleadings filed by Defendant Illinois Department of Corrections ("IDOC") also be granted.

The Report and Recommendation as to the Motion to Dismiss was entered on October 16, 2018 (Doc. 57). Plaintiff Tracy Thomas ("Thomas") filed an objection to this Report and Recommendation (Doc. 62). The Report and Recommendation as to the Motion for Judgment on the Pleadings was entered on December 6, 2018 (Doc. 65). Thomas did not file an objection to this Report and Recommendation.

## BACKGROUND

Thomas, an IDOC inmate, was incarcerated at Lawrence Correctional Center ("Lawrence") at the time he initiated this action. Following a threshold review of the Complaint, Thomas was allowed to proceed on two claims:

**Count 1-** Eighth Amendment claim against Defendant Coe for denying Thomas adequate medical care for the broken arm and torn ACL that resulted from a basketball injury at Lawrence on or around May 1, 2015.

**Count 2-** Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 *et seq.*, and/or Rehabilitation Act, 29 U.S.C. §§ 794-794e, against the IDOC for failing to accommodate Thomas's disability related needs when prison officials confiscated his prescribed knee brace and denied him a wheelchair at Lawrence beginning in May 2015.

On July 2, 2015, Thomas was released from prison (Doc. 1, p. 10).[1] On October 30, 2017, after he was back in prison, Thomas filed this lawsuit (Doc. 1, p. 1). The Complaint was originally filed in the Northern District of Illinois but was transferred to this Court on December 18, 2017 (Doc. 4).

On June 22, 2018, Defendant Coe filed a Motion to Dismiss asserting that Thomas's claims against him are barred by the statute of limitations (Docs. 41 and 42). Thomas filed a timely response to that motion (Doc. 53). On October 22, 2018, Defendant IDOC (through its Director John Baldwin) filed a Motion for Judgment on the Pleadings, similarly asserting that Thomas's claims against the IDOC are barred by the statute of

---

[1] Over a year later, on April 15, 2016, Thomas was reincarcerated at Winnebago County Jail (Doc. 37, p. 16). On June 16, 2017, he went to Stateville Correctional Center (Doc. 37, p. 17). In September or October of 2017, he was transferred to Dixon Correctional Center, where he currently remains (Doc. 37, p. 17, 20).

limitations (Docs. 59 and 60). Thomas did not file a response to that motion.

## THE REPORTS AND RECOMMENDATIONS

Judge Wilkerson recommends granting Defendant Coe's Motion to Dismiss and granting Defendant IDOC's Motion for Judgment on the Pleadings.

As to Defendant Coe's Motion to Dismiss, Judge Wilkerson found that, under the continuing violation doctrine, the statute of limitations began to accrue on the date that Thomas was released from prison, which was July 2, 2015. When Thomas filed suit on October 30, 2017, the two-year statute of limitations had already run. As to Defendant IDOC's Motion for Judgment on the Pleadings, Judge Wilkerson similarly found that the statute of limitations began to accrue on the date that Thomas was released from prison—July 2, 2015—because that was the latest possible date a discriminatory act under the ADA could have occurred. Thus, when Thomas filed suit on October 30, 2017, the two-year statute of limitations had expired.

## DISCUSSION

Here, Thomas filed a timely objection to the Report and Recommendation regarding Defendant Coe's Motion to Dismiss. Thomas did not file an objection to the Report and Recommendation regarding Defendant IDOC's Motion for Judgment on the Pleadings. When timely objections are filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at

all evidence contained in the record and give fresh consideration to those issues to which specific objections have been made and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). When objections are not made, the undersigned District Judge need not undertake *de novo* review. 28 U.S.C. § 636(b)(1)(C); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999). Instead, the Court should review the Report and Recommendation for clear error. *Johnson*, 170 F.3d at 739. The Court may then "accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788. Accordingly, the Court will conduct a *de novo* review of the Report and Recommendation regarding Defendant Coe's Motion to Dismiss and a clear error review of the Report and Recommendation regarding Defendant IDOC's Motion for Judgment on the Pleadings.

As to the Report and Recommendation regarding Defendant Coe's Motion to Dismiss, Thomas argues that the statute of limitations did not begin to run on July 2, 2015, because he was never fully released from the custody of the IDOC until his two years of parole ended on July 2, 2018. Thomas argues that, by being on parole, he was still "being held under the guidelines, custody and jurisdiction of the Illinois Department of Corrections and was subjected to any, and all rules, and regulations of the Illinois Department of Corrections." (Doc. 62, p. 2). Thomas also contends that, because Lawrence

denied him his last medical appointment for an MRI, he was never aware of or had knowledge of the full extent of his physical injuries.

"The statute of limitations to bring a claim under 42 U.S.C. § 1983 is determined by state law." *Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). In Illinois, the applicable statute of limitations is two years. 735 ILCS § 5/13-202; *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). As to when the claim accrues, the Court looks to federal law. *Gekas*, 814 F.3d at 894. "A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013). Where a claim alleges a continuing violation, however, the statute of limitations begins to accrue when treatment is provided or the inmate is released from prison. *Heard v. Shehan*, 253 F.3d 316, 318-19 (7th Cir. 2001); *Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013) ("For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of the violation, not the first.").

Thomas argues that he was never released from the full custody of the IDOC because, even after his release from Lawrence, he was still under the custody and jurisdiction of the IDOC for two years as a parolee (Doc. 62, p. 2). But when Thomas left Lawrence, Defendant Coe no longer had a duty to provide Thomas with medical care because Thomas was no longer residing within the facility. *See Devbrow*, 705 F.3d at 770 ("[t]his refusal continued for as long as the defendants had the power to do something about his condition, which is to say ***until he left the jail***.") (emphasis added); *Mitchell v.*

*Kallas*, 895 F.3d 492, 496 (7th Cir. 2018) (Although, "prison officials thus have a constitutional duty to provide inmates with the care they require," this duty "ends when imprisonment does, but state officials may not block a parolee from independently obtaining health care.").

Thomas also contends that, because Lawrence denied him his last medical appointment for an MRI, he was never aware of or had knowledge of the full extent of his physical injuries. But the statute of limitations starts to run "when the plaintiff discovers his injury and its cause *even if the full extent or severity of the injury is not yet known*." *Devbrow*, 705 F.3d at 768 (emphasis added); *see also Koch v. Gregory*, 536 F. App'x 659, 660 (7th Cir. 2013) (a plaintiff's claim accrues "[o]nce a plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury. . . ."). Thomas claims to have suffered from pain, swelling and reinjury during the period of time that Defendant Coe was allegedly deliberately indifferent to Thomas's injured arm and leg. It is during that time Thomas knew Defendant Coe's inactions were harmful to him.

Thus, the Court finds Judge Wilkerson's conclusion that the statute of limitations for the continuing violation accrued on July 2, 2015 sound and overrules Thomas's objections to that conclusion.

Although not raised by either side, there is one other issue worth considering, and it relates to the tolling of the statute of limitations. Defendant IDOC previously filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Docs. 22 and 23), which has since been withdrawn (*see* Doc. 36). Prior to withdrawal of

the motion, Judge Wilkerson held a *Pavey* hearing on June 6, 2018 (Doc. 37). At that *Pavey* hearing, the only evidence of exhaustion of administrative remedies was an emergency grievance filed by Thomas on June 29, 2015, before he was released from prison (Doc. 37, p. 19). Defendant Coe has also filed a Motion for Summary Judgment based on Failure to Exhaust Administrative Remedies (Docs. 54 and 55), which remains pending. In response to this motion, Thomas asserts that he filed an emergency grievance on May 5, 2015 (Doc. 58).

The Seventh Circuit has held that a federal court relying on the Illinois statute of limitations in Section 1983 cases must toll the limitations period while a prisoner completes the administrative grievance process. *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Judge Wilkerson noted in footnote 3 of his Report and Recommendation that, because he was "using the later date of release to determine when the statute of limitations began to accrue, there is no administrative process that would toll the statute." (Doc. 57, p. 3).

The Court adds that Thomas testified at the *Pavey* hearing that he never received a response to the June 29, 2015 emergency grievance (Doc. 37, p. 25-26). Thomas similarly asserts in his response to Defendant Coe's motion for summary judgment that he never received a response to the May 5, 2015 emergency grievance (Doc. 58, p. 1-2). Thomas may or may not be referring to the same grievance. Regardless, "if a plaintiff does not receive a final response to his administrative complaint, his remedies are deemed exhausted when they become unavailable." *Bailey v. Cook Cty.*, Case No. 16 C 6989, 2017

WL 4180308, at *2 (N.D. Ill. Sept. 21, 2017). When Thomas was released from prison, the administrative remedies sought through his emergency grievances were no longer available to him, and the statute of limitations began to run. *Id.* (citing *Merritte v. Lasalle Cty. Sheriff's Office*, No. 14 C 7058, 2015 WL 8986857, at *7 (N.D. Ill. Dec. 16, 2015) (statute of limitations began to run on inmate's claims when he transferred to a different jail because the administrative remedies of his former jail were no longer available to him)); *see also Diaz-Guillen v. Vieregge*, Case No. 3:15-CV-1101-NJR-DGW, 2017 WL 2645624, at *2 (S.D. Ill. Jun. 20, 2017) ("once [the plaintiff] moved out of the Fayette County Jail . . . and into IDOC custody, he clearly was not going to receive a response to any grievances he may have filed."). Because the Court finds that the statute of limitations began to accrue on the date of release, which is also the date on which Thomas's administrative remedies became unavailable to him, the administrative process does not toll the statute of limitations in this instance.

After conducting a *de novo* review of Thomas's objections to Judge Wilkerson's Report and Recommendation on Defendant Coe's Motion to Dismiss and a clear error review of Judge Wilkerson's Report and Recommendation on Defendant IDOC's Motion for Judgment on the Pleadings, the Court finds the motions should be granted. Thomas's claims as to Defendant Coe and Defendant IDOC are barred by the statute of limitations.

## Conclusion

For these reasons, the Court **ADOPTS** Judge Wilkerson's Report and Recommendation regarding Defendant Coe's Motion to Dismiss (Doc. 57), **OVERRULES**

Thomas's Objection to that Report and Recommendation (Doc. 62), and **ADOPTS** Judge Wilkerson's Report and Recommendation (Doc. 65) regarding Defendant IDOC's Motion for Judgment on the Pleadings. The Motion to Dismiss filed by Defendant Coe (Doc. 41) is **GRANTED**; the Motion for Judgment on the Pleadings filed by Defendant IDOC (Docs. 59 and 60) is likewise **GRANTED**. In light of this, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Coe (Docs. 54 and 55) and the Motion to Stay Discovery Deadlines filed by Defendant IDOC (Doc. 71) are **DENIED as moot**. This action is **DISMISSED with prejudice**, and judgment will be entered accordingly.

### NOTICE

If Thomas wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Thomas chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Thomas files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Thomas wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Thomas showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Thomas chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Thomas cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Thomas plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED: January 29, 2019**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**